IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ANDRE TOSTE & JOAO PAULINO, LDA - JOINT VENTURE | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-902C |
| | ) | (Judge Baskir) |
| THE UNITED STATES | ) | |
| Defendant. | ) | |

DEFENDANT'S ANSWER & COUNTERCLAIMS

For its answer to the complaint, defendant admits, denies, and alleges as follows:

1. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1, so denies.

2. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2, so denies.

3. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3, so denies.

4. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4, so denies.

5. Admits the United States, Department of the Navy located at 1510 Gilbert Street, Building N26, Norfolk, VA23511-2699 issued Solicitation No. N62470-99-B-9155, titled "API Tank Repairs, Tanks 1642 and 1643" to be performed at Lajes Field, Azores. Denies all other allegations contained in paragraph 5. Avers that Solicitation No. N62470-99-B-9155 was issued on March 16, 2001.

6. Admits.

7. Denies the allegations contained in paragraph 7. Avers that on August 10, 2001, Andre Toste & Joao Paulino, LDA resubmitted their bid of $1,644,880.00 dated April 19, 2001, and acknowledged receipt of Amendment 0004.

8. Denies. Avers that defendant awarded the contract to Andre Toste & Joao Paulino, LDA on September 28, 2001.

9. Denies.

10. Denies.

11. Admit the allegations in paragraph 11 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies all other allegations contained in paragraph 11.

12. Admits.

13. Admits.

14. Admits the allegations in paragraph 14 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies all other allegations contained in paragraph 14.

15. Denies. Avers that defendant requested that Andre Toste & Joao Paulino, LDA submit its costs.

16. Denies.

17. Denies.

18. Admits the allegations in paragraph 18 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies all other allegations contained in paragraph 18.

19. Admits the allegations in paragraph 19 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies all other allegations contained in paragraph 19.

20. Admits that Toste submitted a revised proposal to defendant on July 1, 2002. Admits the allegations in paragraph 20 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies all other allegations contained in paragraph 20.

21. Admits the allegations in paragraph 21 to the extent supported by the documents cited, which are the best evidence of their contents; otherwise denies all other allegations contained in paragraph 21.

22. Admits the allegations contained in paragraph 22 that the Navy requested a DCAA Audit on September 10, 2002. Denies all other allegations contained in paragraph 22. Avers that the audit entrance conference occurred on October 9, 2002, and that the audit exit conference occurred on October 21, 2002.

23. Denies.

24. Admits.

25. Admits.

26. Admits the allegations in paragraph 26 to the extent supported by the document quoted, which is the best evidence of its contents; otherwise denies all other allegations.

27. Admit the allegations in paragraph 27 to the extent supported by the document cited, which is the best evidence of its contents; otherwise denies all other allegations.

28. Admit the allegations in paragraph 28 to the extent supported by the document quoted, which is the best evidence of its contents; otherwise denies all other allegations.

29. Admit the allegations in paragraph 29 to the extent supported by the document quoted, which is the best evidence of its contents; otherwise denies all other allegations.

30. The allegations in paragraph 30 are conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

31. The allegations in paragraph 31 are conclusions of law to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

32. Admit the allegations in paragraph 32 to the extent supported by the document quoted, which is the best evidence of its contents; otherwise denies all other allegations.

33. The allegations in paragraph 33 are plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

34. The allegations in paragraph 34 are conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

35. The allegations in paragraph 35 are conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they are deemed allegations of fact, they are denied.

36. The allegations in paragraph 36 are conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they are deemed allegations of fact, they are denied.

37. The allegations in paragraph 37 are conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they are deemed allegations of fact, they are denied.

38. The allegations in paragraph 38 are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.

39. Defendant's responses to paragraphs 1 through 38 are incorporated by reference.

40. The allegations in paragraph 40 are conclusions of law to which no response is required; to the extent they are deemed allegations of fact, they are denied.

41. Defendant's responses to paragraphs 1 through 40 are incorporated by reference.

42. The allegations in paragraph 42 are conclusions of law and plaintiff's characterization of its case to which no response is required; to the extent they may be deemed allegations of fact, they are denied.

43. Denies that plaintiff is entitled to the relief requested in paragraph 42 or to any relief whatsoever.

44. Denies each and every allegation not previously admitted or otherwise qualified.

AFFIRMATIVE DEFENSES

45. Plaintiff's claims are barred by the affirmative defense of assumption and risk.

46. Plaintiff's claims are barred by the affirmative defense of fraud.

47. Plaintiff's claims are barred by the affirmative defense of payment.

48. Plaintiff's claims are barred by the affirmative defense of set-off.

DEFENDANT'S COUNTERCLAIM

1. This Court possesses jurisdiction to entertain defendant's counterclaim pursuant to 28 U.S.C. §§ 1503 and 2508, as well as the Contract Disputes Act, 41 U.S.C. §§ 601-611.

2. On September 28, 2001, defendant awarded contract No. 62470-99-C-9155 for repairs of tanks 1642 and 1643 at Lajes Field, Azores, to Andre Toste and Joao Paulino, LDA, ("Toste").

3. On October 18, 2001, defendant issued a stop work order because the tanks were not empty and therefore not ready for repair. The stop work order was expected to last until approximately February 1, 2002.

4. On October 25, 2001, defendant sent an email to Toste canceling the pre-construction meeting that was scheduled for October 30, 2001.

5. Defendant reminded Toste of the suspension of work order on October 25, 2001, and December 11, 2001, because Toste continued to submit "Requests for Information" ("RFIs"). In an email sent December 11,

2001, defendant answered Toste's RFIs by stating that, until the suspension of work order was lifted, no further contract actions should take place. The email also stated that the clarifications given in response to the RFIs were not to be considered a notice to proceed.

6. On January 29, 2002, defendant notified Toste via letter that it had discovered some discrepancies in Toste's bid and asked for a response. Specifically, defendant discovered that Toste interchangeably used the names of two different business entities, Andre Toste & Joao Paulino LDA and Andre Toste & Joao Paulino, LDA, JV, trhoughout its bid and performance bond documents. Consequently, Toste's bid was arguably invalid because it was signed by only two of its three partners, when all three partners' signatures were required in order to bind the company.

7. On January 31, 2002, Toste submitted a response to the defendant. This response did not resolve the noted discrepancies.

8. On March 19, 2002, defendant issued "Unilateral Modification P00001" terminating the contract for the convenience of the Government. Defendant requested that Toste submit a cost proposal for actual costs incurred from September 28, 2001 to October 18, 2001.

9. On May 7, 2002, Toste submitted its proposal in the amount of $463,772.00.

10. On May 29, 2002, defendant asked for additional information regarding proof of the incurrence, allocability and reasonableness of costs proposed in the termination settlement proposal. Defendant also requested a revised proposal and advised Toste that the Defense Contract Audit Agency ("DCAA") would conduct an audit of its proposed costs as required by FAR 49.107.

11. On July 1, 2002, Toste submitted a revised proposal dated June 14, 2002, in the amount of $478,805.71. Toste submitted no additional documentation to support the incurrence, allocability, or reasonableness of proposed costs.

12. On November 15, 2002, the DCAA completed its audit. The auditor concluded Toste's proposal was not an acceptable basis for negotiation of a fair and reasonable price for settlement costs. The audit questioned all of Toste's costs with the exception of $18,812.00. The audit found that Toste failed to provide auditable support for alleged actual costs, that Toste proposed costs incurred during the suspension of work period, and that Toste proposed 50 percent of the acquisition cost of construction

equipment as a direct cost for its termination proposal. Additionally, Toste failed to separately identify or record costs as direct or indirect or by job or task. Nor did it maintain time sheets or other supporting documentation for labor charges. Specifically the audit found:

(a) Insurance: Toste proposed liability insurance cost based upon a full-year premium when the contract was only for six months.

(b) API & NACE Publications: Toste proposed costs for API & NACE publications, yet the invoice was dated after the stop work order was issued and indicated that the buyer of the publications was "MIT in Cambridge, MA" and that they were shipped to "MIT in Hyde Park, MA." There was no evidence indicating that the invoice was allocable to the contract.

(c) Equipment: Toste's proposal was based upon 50 percent of the purchase price of each item less "salvage." Toste's explanation was that it allocated to the contract six months of the 12 month period it intended to pay off the equipment. Toste overstated the price of one piece of equipment by $4,697, due to its use of the Euro conversion rate instead of the U.S. dollar rate. The equipment was ordered either before the contract was awarded or after the stop work order was issued. Toste did

not maintain usage logs for the equipment. Also, Toste was using the equipment on other projects.

(d) Submittal Preparation Labor: Toste based its proposal for submittal preparation costs upon judgmental estimates for which it had no supporting documentation because it did not maintain time cards or any other labor-charging documentation. Additionally, Andre Toste and Joao Paulino were the only two individuals who earned an amount approximate to the proposed $35 an hour for two employees in October 2001 and for the two employees for October 2001 through March 2002. Upon information and belief, Toste overstated its employees' earnings. Moreover, the proposed employees were not working exclusively on this contract, some were working part-time, and some did not work at all.

(e) Office Cost: Toste proposed six months of "general running costs" and "Office Clerk" costs, thereby including costs incurred after the suspension of work. The auditor could not recreate the method by which Toste calculated these costs. Toste could offer no supporting documentation. Upon information and belief, the agency believes these costs were covered by general overhead costs.

(f) Quality Control ("QC") Organization: Toste's proposal included QC Manager costs, Alternate QC Manager costs, and Safety Officer costs. All proposed costs were judgmental estimates with no supporting documentation, and included costs incurred after the suspension of work. Further, through conversations with the auditor Toste disclosed that it did not account for labor by contract or task and that between the award date and the stop work date, these employees were not working exclusively on this contract.

(g) Site Preparation: Toste's proposed costs for this item were incurred after the stop work order. Toste could not provide supporting documentation for most items. Toste could provide no evidence, i.e., a lease, to support the $10,000 rental fee for property adjacent to the base. Some of the invoices were in the name of Toste & Paulino, LDA, JV, not Toste & Paulino, LDA (the contractor).

(h) Legal Assistance: Toste proposed $10,000 for legal retainer fee plus ten percent overhead. Toste did not provide access to the agreement with the attorney or any billings or support for work performed.

(i) Subcontractor Cost: The audit questioned proposed subcontractor costs because several subcontract agreements were entered

into either prior to contract award or after the stop work order was issued. Additionally, Toste did not notify any of its subcontractors that the contract was under a suspension of work order. Toste obtained invoices without supporting documentation from the subcontractors, thus the auditor could not determine that Toste performed adequate review of proposed subcontractor costs. Upon information and belief, the subcontractors obtained access to the base only because Toste led base security to believe that the subcontractors were there to work on other contracts Toste held with the Navy at that time.

(j) Overhead Rates: Toste proposed overhead rates of 100 percent applied to labor and 10 percent applied to all other costs. Toste stated that it derived this rate from an amount noted on a subcontractor billing. The auditor attempted to calculate an actual overhead rate, but could not do so because Toste does not distinguish between direct and indirect costs. By proposing the partners, clerks, and office supplies, which should be indirect costs, as direct costs there should not have been many remaining indirect costs. Thus, the auditor questioned all of their overhead costs.

13. On January 22, 2003, plaintiff's counsel confirmed that it had received a copy of the audit findings.

14. On February 24 and 25, 2003, defendant and plaintiff made various unsuccessful attempts to settle the issue.

15. On August 29, 2003, the Contracting Officer issued a final decision, finding that Toste was entitled to $5,682.00 in settlement costs.

16. On May 21, 2004, Toste filed its complaint in this Court appealing the Contracting Officer's final decision.

FIRST COUNTERCLAIM

(28 U.S.C. § 2514)

17. Toste knowingly submitted false claims to the contracting officer and intended to deceive the Navy when, among other things, it (1) failed to notify subcontractors of the stop work order and entered into several subcontract agreements after the stop work order was issued; (2) attempted to charge the Navy for six months of work when the active contract period was approximately three weeks; 3) inflated employees' salaries and charged full-time for employees who either worked part-time or who did not work on this contract at all; 4) attempted to charge the Navy 50 percent of the purchase price of equipment that was purchased prior to

contract award or after the stop work order date and used on other contracts; 5) attempted to charge the Navy for publications that were ordered by someone other than the contractor; 6) attempted to collect $10,000 for the rental of land that was illogical and unnecessary and for which it could not produce a lease, and 7) signed the bid documents with the name of one business entity (but not including all signatures required by law to bind the entity) while obtaining the bid guarantee under another entity's name.

SECOND COUNTERCLAIM

(31 U.S.C. § 3729(a))

18. Toste knowingly or with reckless disregard submitted claims to the contracting officer that included 1) costs that were incurred prior to contract award or after the stop work order issued; 2) costs that are completely unsupported by documentation; 3) costs incurred as a result of Toste's failure to notify subcontractors of the stop work order and its decision to enter into subcontract agreements after the stop work order issued; and 4) overstated costs that were unallocable to this contract.

THIRD COUNTERCLAIM

(41 U.S.C. § 604)

19. Toste intended to mislead the Navy when it knowingly submitted claims to the contracting officer that included 1) costs that were incurred prior to contract award or after the stop work order issued; 2) costs that are completely unsupported by documentation; 3) costs incurred as a result of Toste's failure to notify subcontractors of the stop work order and its decision to enter into subcontract agreements after the stop work order issued; and 4) overstated costs that were unallocable to this contract.

WHEREFORE, defendant requests that the complaint be dismissed, that judgment be entered in favor of defendant, that a fine of not less than $5,000 and not more than $10,000 per violation, plus an amount presently indeterminable for violations of 31 U.S.C. § 3729, such some duly trebled together with attorneys' fees and costs, and for violations of 28 U.S.C. § 2514 and 41 U.S.C. § 604; and such further relief as this Court deems just and proper.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Assistant Director

Of Counsel:

PAM NESTELL
Department of the Navy
720 Kennon Street SE
Suite 136
Washington Navy Yard, DC
20374

s/ Lindsay Williams
LINDSAY WILLIAMS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Phone: (202) 353-7995
Fax: (202) 514-8624

November 3, 2004

Attorneys for Defendant