IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ANDRE TOSTE &
JOAO PAULINO, LDA – JOINT VENTURE

Plaintiff,

V.

UNITED STATES OF AMERICA,

Defendant.

No. 04-902C
(Judge Baskir)

**PLAINTIFF'S ANSWER AND REPLY TO DEFENDANT'S ANSWER AND COUNTERCLAIM**

The Plaintiff Andre Toste & Joao Paulino, LDA - Joint Venture ("Toste & Paulino, LDA – JV" or "Plaintiff") by its attorneys, for its Reply to the Answer with Counterclaim by Defendant, dated November 3, 2004, ("Counterclaims"), upon knowledge with respect to its own acts, and upon information and relief as to all other matters, state as follows.

**REPLY TO DEFENDANT'S COUNTERCLAIM**

1. The allegations in paragraph 1, P.8, are conclusions of law to which no response is required. To the extent they may be deemed allegations of fact they are denied.
2. Defendant denies allegation. In addition, the bid bond was issued in the name of Andre Toste & Joao Paulino, JV.

A brief history and background would helpful to the court and follows below.

**Background**

a. The firms André Toste & João Paulino, Lda., initially presented a bid as joint venture, on April 9, 2001. André Toste is a sole proprietorship, established in

Praia da Vitoria, Azores, Portugal in 1980. João Paulino, Lda., is a corporation, registered in Praia da Vitoria, Azores, Portugal, in 1989.

b. Another firm is registered as André Toste & João Paulino, Lda., also registered at Praia da Vitoria, under number# 145, and started operations in 2001.

c. The address for André Toste and João Paulino, Lda-Joint venture is Estrada 25 de Abril nº 108, 9760 Praia da Vitória, Tel/Fax 011-351-295-543086. On August 10, 2000 the firms André Toste & João Paulino, Lda., requested to DLA a DUN'S number to operate as joint venture and was successful processed. Page 2/20 of bid solicitation was stamped with a stamp of André Toste & João Paulino, Lda, and printed JV (joint venture) by hand.

d. The bid bond presented was issued in the name of André Toste and João Paulino, Lda., Joint Venture.

e. On May 16, 2001 Plaintiff received a letter by fax from the contracting office informing them that they were the low bidder. This letter was addressed to André Toste & João Paulino, Lda, and the Navy mistakenly did not include the words "Joint Venture."

f. After being informed by the contracting office that it suspected bid errors, Plaintiff, on May 17, 2001, requested the Navy withdraw its bid.

g. On July 29, 2001 NAVFACENGCOM issue an amendment (amendment #004), to convert the solicitation from a sealed bid to a negotiated procurement.

h. On August 10, 2001 André Toste & João Paulino, Lda. – JV presented a new bid for this solicitation in accordance with amendment # 004. The bid was presented under the name Andre Toste & Joao Paulino, LDA – JV.

i. In addition, the bid bond was presented in the name Andre Toste & Joao Paulino, LDA – Joint Venture.

j. On Sept. 28, 2001 the Navy awarded the contract to Plaintiff.

k. On Sept. 28, 2001 the Navy sent a letter to Plaintiff outlining instructions for performance of the Contract.

l. On October 2, 2001 the Navy resident officer in charge of construction arranged a pre-construction conference for Oct 30, 2001 requiring the immediate preparation and execution of work.

m. On October 18, 2001, NAVFACENGCOM issued a suspension of work alleging the Tanks were not empty or ready for repair. The Suspension of Work stated the stay of performance was anticipated to last until 1 February 2002.

n. On October 25, 2001 resident officer in charge of construction cancelled the pre-construction conference scheduled for October 30.

o. A series of correspondences regarding the legitimacy of the offer and award ensued between the parties.

p. Not until March 19, 2002 did the Navy terminate the contract for convenience and requested a cost proposal for the term 28 Sept. until 18 Oct, 2001. This was despite the fact that the termination for convenience was not issued until Mar 19, 2002.

3. Admit the defendant issued a stop work order, but Plaintiff is without knowledge or information as to why.
4. Admit.
5. Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in par 5 of the Counterclaim.
6. Denies.
7. Denies. Prior to the Termination for Convenience, Plaintiff submitted a series of correspondence to establish this point.
8. Admit. But Plaintiff was entitled pursuant to the termination for convenience to costs at least up until the termination for convenience and under law continuing as well as certain pre-contract costs.
9. Admit.
10. Admit.
11. Plaintiff admits the first the sentence, and denies the second sentence.
12. Plaintiff admits the first sentence, the balance are defendant's characterization of its case to which no response is required; to the extent they are deemed allegations of fact they are denied.

12 (a) **Insurance:**

The terms of the insurance contract were annual and were paid.

b) **API & NACE Publications:**

Plaintiff requested MIT Mr. Tony Ogunsanya to purchase these publications which is the reason why the invoice is in MIT's name. Plaintiff understood that it could proceed with documentation work (preparation of submittals, Q.C. plan

safety plan, etc.) because there was a pre construction meeting scheduled for 30, October 2001, that was canceled only on the 25th of October, 2001. The publications were ordered in the beginning of October and delivered on 10/23/2001.

c) **Equipment:**

This type of equipment is not available for sale on Terceira Island. Terceira Island is one of the islands of the Azores Mid Atlantic, isolated and hard to reach. The equipment had to be ordered in advance and cancellation of an order carries costly penalties. Plaintiff also expected the contract to be restarted in February 2002**,** as stated by the defendant.

d) **Submittal preparation costs:**

This cost was estimated.

Plaintiff's business is a very small operation.

e) **Office cost:**

The method used to calculate these costs, was a percentage of Plaintiff's office running expenses on this contract. (about 30% of total cost).

The defendant's statement that "upon information and belief, the agency believes these costs were covered by general overhead costs", is incorrect.

f) **Quality Control (OC) organization:**

Plaintiff denies any conversation with the auditor regarding that these employees were not working exclusively on this contract.

g) All the items claimed were purchased for use on this contract. It is possible that some costs are invoiced after the stop work order, but they were ordered before that time. The rental of property adjacent to the job site was made to install underground 11.V. cables to feed an electrical transformer (also purchased and installed) to connect to the commercial local and distribution network, in order to power.

11e site tools and equipments required to perform the contract.

h) **Legal assistance:**

Plaintiff paid $10,000,00 retainer fee and explained this to the auditor. This was the initial Retainer paid to Plaintiff's attorney.

i) The defendant's allegation "Upon information and belief, the subcontractors obtained access to the base only because Toste led base security to believe that the subcontractors were to work on other contracts Toste held with the Navy at that time" is false. See Plaintiff's 17 .1 below.

(j). Denied.

14. Admit. However, in order to understand the history and heavy handed approach by the government in asserting false claims and fraud, it is important to note that this primary claim comes about as a result of a Termination for Convenience. The government has consistently maintained that it should have utilized alternate mechanisms to either cancel the contract or terminate the contract for default. Before the contracting officer's final decision was issued on August 29, 2003, plaintiff's counsel had discussions with the Navy who took a harsh litigative position and stated that in the event the plaintiff did not agree to the settlement amount offered by the Navy of $5,682.00 in February

2003, the government would withdraw its Termination for Convenience and cancel the contract alleging this would preclude any entitlement to cost. Counsel for the plaintiff by communication dated February 25, 2003, notified the Navy that according to case law that once the government terminated a contract for convenience it was not permitted to then convert that termination for convenience to either a cancellation or termination for default and stated that such action would subject the government to additional expenses either in the nature of settlement expenses and/or attorney's fees under EAJA.

Plaintiff’s counsel also submitted a second letter in attempting settlement, discussing certain legal entitlements and allowabilities of cost because of a unique circumstance present in that there was a Suspension of Work clause that was subsequently superseded by a Termination for Convenience. In this legal submission, which also covered the fact that in certain limited instances pre-contract costs are permitted, counsel for plaintiff again addressed the issue which the government kept raising that a Termination for Convenience was not warranted and in fact some other means should have been utilized i.e., alleging Plaintiff’s original bid was nonresponsive as stated in the CO’s decision date August 29, 2003.

Counsel for plaintiff cited the following case law, "having elected a method of termination, the Government cannot change its mind and resort to an alternate method. For example, a Termination for Convenience may not be converted to a Termination for Default.” Construction Co. v. United States, 198 Ct. Cl. 154(1947); Roged, Incorporated, ASBCA No. 20702, 76–2 DCA P128018; Richardson Camera Company, Inc., ASBCA No. 11930, 68 DCA P6990; American Kow Enterprises, GSBCA No. 4460,

76–1 DCA P11749 cited with approval in Cecile Industries, Inc. 81–1 DCA, 15, 122 April 30, 1981.

With respect to the position that in certain limited instances pre-contract costs were allowable plaintiff's counsel cited to the contracting officer and its counsel that "the costs allowable range from pre-contract costs, to post contract costs in limited circumstances. FAR 31.205–32 provides that (1) costs incurred prior to the effective date of the contract pursuant to the negotiations and in anticipation of the award of the contract may be compensable; (2) such costs must be incurred in order to comply with the proposed contract delivery schedule, and (3) the costs would have been allowable if incurred at the contract award."

If contractors act conscientiously in planning for, lining up subcontractors and providers, they should be entitled to any costs associated with these tasks even if the costs are incurred prior to receipt a formal notice of contract award. RHC Construction v. Cano. 283, 88–3 BCA paragraph 20.991. Such costs may include advance commitments made to subcontractors, costs of hiring and training new employees, advance purchase of materials and actual labor and material costs."

Also unique to this case is the background of the pre-contract action in this contract award, suspension of work and then notice of termination.

The original procurement was by sealed bid 15 March 2001. It was converted to a negotiated procurement on 29 July 2001 and the plaintiff submitted an offer on 10 August 2001. An award was made by 28 September 2001 with a suspension of work issued on 18 October 2001. However, the suspension of work specifically stated as follows "the stay of performance is anticipated to last until approximately 1 February 2002". Despite

that, a Termination of Convenience was not provided until March 20, 2002. Under case law it is clear that the cost preclusion of a Suspension of Work only precludes increases for limited periods of time. Here the Suspension of Work cost allows increased costs when performance of all or any part of the work is suspended, delayed or interrupted for an unreasonable period of time, which is what occurred herein. Generally a contractor is entitled to an adjustment in contract (excluding profit) if there is a government–cause suspension, delay, or interruption of the work, which lasts for an unreasonable period of time. The Eichleay formula requires some degree of uncertainty as to the duration of the delay which makes it impracticable for the contractors to take on work. Citing CDC Enterprises, Inc. v. US, 978 F.2d 669 (Fed. Cir. 1992) cited in Stroh Corporation v. GSA 961-BCA 28265, March 29, 1996.

15. Admit

16. Admit

**REPLY TO FIRST COUNTERCLAIM**

17. Plaintiff denies the allegations of false claims to the Contracting Officer.

1) All subcontract agreements were made after 28 Sep 2001 and 18 Oct 2001.

2) Plaintiff did not attempt to charge the Navy for six months of work, but for part of the costs.

3) Denied.

4) The equipment invoice dates doesn't mean that equipment was purchase on the same dates. Plaintiff purchased this equipment for this contract.

5) These publications were purchased as a requirement for this contract.

6) The property renter is adjacent to the job site. It's rental was necessary in order the install the H.V. cables, from the local commercial network, to feed to II.V. transformer site equipments needed to perform the work under this contract.

Note: that the electrical power was responsibility of the contractor, was logic and necessary. The property was rented for the contract period.

7) The Bid document was made by André Toste and João Paulino Lda – Joint venture and bid guarantee was also presented in André Toste and João Paulino Lda – Joint Venture. Only two signatures were required.

## Second Counterclaim

18. 1) The invoice date does not necessary mean that exact date of goods or services delivery.

2) Plaintiff does not have all the supporting documentation.

3) Denies

4) Denies

## Third Counterclaim

19. Plaintiff denies the allegation to intend to mislead the Navy.

Date: May 31, 2005

Respectfully submitted,

S/ Scott H. Gdanski
SCOTT H. GDANSKI
Attorney for Plaintiff
Andre Toste & Joao Paulino, LDA - JV
25 Sherwood Ridge Road
Pomona, New York 10970

CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May 2005, a copy of the foregoing Plaintiff's Answer And Reply To Defendant's Answer And Counterclaim was filed electronically with notice to be sent to all parties.

S/ Scott H. Gdanski